**BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF ADAMS, State of Colorado, Plaintiff–Appellant,**

v.

**COLORADO DEPARTMENT OF PUBLIC HEALTH AND ENVIRONMENT, Defendant–Appellee,**

and

**Clean Harbors Deer Trail, L.L.C., a Colorado Limited Liability Company, Intervenor–Appellee.**

No. 06CA1891.

Colorado Court of Appeals,
Div. V.

Oct. 4, 2007.

Lindquist & Vennum, P.L.L.P., Howard Kenison, Stuart N. Bennett, Denver, Colorado, for Plaintiff–Appellant.

John W. Suthers, Attorney General, Jerry W. Goad, Assistant Attorney General, David E. Kreutzer, Assistant Attorney General, Denver, Colorado, for Defendant–Appellee.

Faegre & Benson, L.L.P., David W. Stark, Todd P. Walker, Denver, Colorado, for Intervenor–Appellee.

ORDER AFFIRMED

Opinion by Judge NEY.*

Plaintiff, the Board of County Commissioners of Adams County, appeals the trial court's order dismissing its claims against defendant, Colorado Department of Public Health and Environment (CDPHE), and intervenor-defendant, Clean Harbors Deer Trail, L.L.C., for lack of standing. We affirm.

## I. Background

Clean Harbors is a hazardous waste disposal facility, which operates under a certificate of designation (CD) issued by Adams County in 2004. That CD, originally approved in 1983, was issued in 1987 to Clean Harbors' predecessor, and then transferred and reissued to Clean Harbors in 2004.

Under the CD application process, when an entity wishes to operate a hazardous waste disposal facility, it must first apply to the local board of county commissioners for a CD. §§ 25–15–201, 25–15–202(1), 30–20–102 & –103, C.R.S.2007. The county then forwards the application to CDPHE, which is required to make various findings of fact on

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2007.

site approval. §§ 25–15–202(4)(c), 25–15–203, 30–20–103(2)–(3), C.R.S.2007. It is only after CDPHE makes those findings and recommends approval of the CD that the county may hold public hearings on the application and, thereafter, issue the CD. §§ 25–15–202(4)(c), 25–15–203, 30–20–103(2)–(3). Clean Harbors' CD was issued in accordance with these procedures.

In 2005, CDPHE issued a permit pursuant to the federal Resource Conservation and Recovery Act (RCRA), allowing the acceptance and disposal of low-level radioactive waste and polychlorinated biphenyls at Clean Harbors. This permit was issued pursuant to CDPHE's permitting authority, section 25–15–301(2)(a), C.R.S.2007, which provides, in pertinent part, that "[CDPHE] shall ... [i]ssue permits for treatment, storage, and disposal facilities."

Asserting the permit was issued without a valid CD, and that it improperly resulted in a substantial change in the design and operation of Clean Harbors, Adams County filed a complaint seeking judicial review of the permit.

CDPHE filed a motion to dismiss, claiming Adams County lacked standing as a subordinate state agency. Clean Harbors then moved to intervene, joined CDPHE's motion, and filed its own motion to dismiss.

The trial court granted the motions and dismissed the claim, concluding Adams County lacked standing to seek judicial review of the permit.

This appeal followed.

## II. Constitutional and Prudential Standing

Adams County asserts that it established both constitutional and prudential standing to seek judicial review. We disagree.

### A. Standing Generally

■ In order for a court to have jurisdiction over a dispute, the plaintiff must have standing to bring the case. *HealthONE v. Rodriguez*, 50 P.3d 879, 892 (Colo.2002). Standing is a threshold issue that must be satisfied in order to decide a case on the merits. *Ainscough v. Owens*, 90 P.3d 851, 855 (Colo.2004).

Colorado's standing requirement embraces both constitutional and prudential concerns. *City of Greenwood Village v. Petitioners for Proposed City of Centennial*, 3 P.3d 427, 436 (Colo.2000). The constitutional prong limits our inquiry to the resolution of actual controversies, while the prudential prong reflects considerations of judicial self-restraint. *Id.*

■ Because standing is a question of law, we review the issue de novo. *Ainscough v. Owens*, 90 P.3d at 857.

### B. Constitutional Standing

■ The constitutional standing requirements are set forth in the two-step test announced in *Wimberly v. Ettenberg*, 194 Colo. 163, 168, 570 P.2d 535, 539 (1977). First, the plaintiff must have suffered an injury-in-fact, and, second, this harm must have been to a legally protected interest as contemplated by statutory or constitutional provisions. *Id.; Ainscough v. Owens*, 90 P.3d at 855.

Here, Adams County asserts it has a legally protected interest to approve or deny a CD, and that CDPHE's interference with that interest constitutes an injury-in-fact.

■ We agree that Adams County has a legally protected right in the CD, and that it has statutory authority to seek review with regard to the CD process. *See* § 25–15–206.5, C.R.S.2007 (county may revoke or suspend a CD); *see also* § 25–15–207(1), C.R.S. 2007 (county may seek judicial review for the award, denial, revocation, or suspension of the CD).

■ However, Adams County did not seek judicial review of the CD, but rather sought review of the permit. Adams County does not possess a similarly protected right in the permit. Instead, any interest in the permit is statutorily vested solely in CDPHE. *See* § 25–15–301(1), C.R.S.2007 ("[CDPHE] shall be the entity in the state responsible for the regulation of hazardous waste management ...."); *see also* § 25–15–301(2)(a).

In addition, section 25–15–301(1) *expressly prohibits* CDPHE from delegating interest in the permit: "[CDPHE] may ... enter into

agreements with local governments to conduct specified activities involving monitoring, inspections, and technical services *but not permit issuance or enforcement.*" (Emphasis added.)

Thus, because Adams County does not hold a legally protected interest in the permit, it has not shown any injury-in-fact necessary to confer constitutional standing.

### C. Prudential Standing

Nonetheless, Adams County contends it has prudential standing. Again, we disagree.

■ The prudential considerations follow "the general rule that counties do not have standing to obtain judicial review of a decision of a superior state agency." *Romer v. Bd. of County Comm'rs*, 956 P.2d 566, 573 (Colo.1998) (quoting *Maurer v. Young Life*, 779 P.2d 1317, 1324 (Colo.1989)). This rule exists so that courts do not unnecessarily intrude into matters which are more properly committed to resolution in another branch of government. *Romer*, 956 P.2d at 573.

■ Where there is a dispute between two executive agencies, standing does not exist unless "the legislature has exercised its prerogative to grant to the subsidiary agency by 'an express statutory right' the ability to sue a superior agency." *Id.* Thus, if CDPHE is a superior agency, Adams County may not proceed against the state unless it has express statutory authority to do so.

### 1. Subordinate Agency

■ Adams County argues it has dual authority over the permitting process, by virtue of its discretionary authority over the CD procedures. However, again we note that Adams County's complaint concerns only the permit, and point to section 25–13–301(1), which renders Adams County subordinate to CDPHE regarding hazardous waste permits. § 25–13–301(1) ("[CDPHE] shall be the entity in the state responsible for the regulation of hazardous waste management . . . ."); *see also* § 25–15–301(2)(a).

Nor are we persuaded that section 25–15–206, C.R.S.2007, renders Adams County equal to CDPHE, as that provision appears to require the facility, not CDPHE, to seek approval by the county prior to any change. *See* § 25–15–206 (requiring that any substantial change in the ownership, design, or operation of a hazardous waste disposal site shall be submitted to the board of county commissioners for approval prior to any change becoming effective).

### 2. Express Statutory Authority

■ Nevertheless, Adams County argues that, even if subordinate, it has express statutory right under sections 25–15–305(2)(a), 24–4–106(4.5), and 25–1–113(1), C.R.S.2007, to seek judicial review. We are unpersuaded, and conclude that nowhere in the statutes is it evident that the General Assembly has expressly conferred on counties standing to sue CDPHE.

Section 25–15–305(2)(a) provides, in pertinent part: "any final determination issued by [CDPHE] . . . including but not limited to, permit determinations [or] permit terms or conditions . . . shall be subject to review in accordance with the provisions of this section *and section 24–4–106, C.R.S.*" (Emphasis added.) However, the supreme court has concluded that section 24–4–106(4), C.R.S. 2007, "does not evince a legislative grant to the County of a legal right to seek judicial review of State Department decisions." *Romer v. Bd. of County Comm'rs*, 956 P.2d at 576. Likewise, section 24–4–106(4.5) precludes review for the same reason, as it allows judicial review only "to the extent" that an action could be maintained under § 24–4–106(4).

Nor does 25–1–113(1) confer express statutory authority upon Adams County to sue CDPHE. That subsection provides review for "[a]ny person aggrieved and affected by a decision of the board . . . or [CDPHE]." However, other than asserting that the permit constitutes injury-in-fact, Adams County has not established it was either aggrieved or affected by the issuance of the permit.

Accordingly, we conclude that Adams County is a subordinate agency to CDPHE, and there is no explicit authority under any reading of the applicable statutes allowing Adams County to sue CDPHE. Therefore,

we affirm the court's order dismissing the case for lack of standing.

The order is affirmed.

Judge GRAHAM and Judge LOEB concur.